# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 22, 2009

## CHAD HUGHES v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of Bedford County**
**No. 11501PC    Robert Crigler, Judge**

---

**No.  M2008-01531-CCA-R3-PC - Filed May 19, 2009**

---

Pursuant to a plea agreement, the Petitioner, Chad Hughes, pled guilty to one count of criminal responsibility for the sale of a Schedule II controlled substance, and the trial court ordered the Petitioner to serve eight years in the Tennessee Department of Correction.  The Petitioner then filed a petition for post-conviction relief claiming he received the ineffective assistance of counsel.  The post-conviction court denied relief after a hearing, and the Defendant now appeals that denial.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the Petitioner, Chad Hughes.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clarence E. Lutz, Assistant Attorney General; Charles S. Crawford, District Attorney General; Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts
### A.  Plea Hearing and Sentencing

At the Defendant's plea submission hearing, the State offered the following factual basis for the Defendant's plea:

> [O]n April 26, 2006, a confidential informant working in conjunction with the Drug Task Force placed a series of phone calls to the defendant requesting to purchase crack cocaine.  In one of those the confidential informant indicated that she had a bill,

which of course is a slang term for $100 to spend on crack cocaine.

She asked the [D]efendant if he would take care of her or do her right, meaning would he provide sufficient quantity of crack cocaine. The [D]efendant responded that he would.

A time and place was set for them to meet. This was to take place at a convenience store here in town. So the agents then searched the confidential informant, searched the confidential informant's vehicle. That met with negative results. They then provided the confidential informant with $100 in funds to make an undercover drug buy.

They also provided her, the confidential informant, with a transmitter so that the event could be audio recorded.

The confidential informant went to this convenience store and waited. A period of time later a green GMC Jimmy pulled into the parking lot. Gazelle Gamble was observed driving the vehicle. You have actually heard these facts when Ms. Gamble pled guilty. Also partly through her sentencing hearing.

Ms. Gamble was driving. The [D]efendant was a passenger. The [D]efendant exited the vehicle; started to get in the confidential informant's vehicle but then instead went to the driver's side and handed Ms. Gamble something and then the [D]efendant went in the store.

Ms. Gamble then exited her vehicle, got in the confidential informant's vehicle, handed crack cocaine to the confidential informant. The confidential informant then handed $100 to Ms. Gamble.

Ms. Gamble got out of the confidential informant's vehicle; got back in the green GMC Jimmy. The [D]efendant got back in and they drove away.

This was all done under the observation of the Drug Task Force personnel.

Then a short time later had a city officer conduct a traffic stop of the green GMC Jimmy. The Task Force backed that up.

They wound up conducting a search of the [D]efendant and they recovered [$]80 of the $100 of the money for the controlled buy in the possession of the [D]efendant. They discovered what turned out to be two and a half grams of crack cocaine hidden on Ms. Gamble's person. Both parties were then arrested. They then interviewed Ms. Gamble. She gave a very detailed statement about her involvement in the illegal drug trade. She indicated that [she] and the [D]efendant were

2

essentially partners in a drug business. She described typically where they were going to purchase their crack cocaine, what quantity. She also gave a list of individuals that they routinely sold crack cocaine to. She said they were essentially equal partners as far as the money that was invested and the effort that was put into selling the crack cocaine here in the community.

The crack cocaine that was the subject of the controlled buy was sent to the lab. It tested positive for cocaine base weighting .5 grams or half a gram.

At the conclusion of the hearing, pursuant to the plea agreement, the trial court sentenced the Defendant as a Range I (standard) offender to eight years in the Tennessee Department of Correction, to be served consecutively to another eight-year sentence the Defendant was serving at the time of the plea hearing.

### B. Post-Conviction Hearing

The Defendant filed a timely petition for post-conviction relief, claiming his trial counsel failed to provide him with effective assistance. At the hearing on the Petitioner's request for post-conviction relief, only the Petitioner and his trial counsel ("Counsel") testified. The Petitioner said Counsel met with him three or four times while he was jailed in Rutherford County, each meeting lasting fifteen minutes. He said Counsel never told him which witnesses would testify at his trial, and, although Counsel interviewed Agent Timothy Lane, Counsel never disclosed the substance of this interview to the Petitioner. The Petitioner testified an audio recording of the drug transaction at issue existed, but Counsel never provided him with a copy of this recording. He said Counsel listened to the tape and identified the Petitioner's voice, but Counsel did not allow the Petitioner to listen to the tape. Also, the Petitioner said his "charge partner," Gazelle Gamble, told investigators the drugs involved in this case belonged to her. According to the Petitioner, Counsel agreed to seek an affidavit from Gamble wherein she would attest that the drugs involved in this case belonged to her. Counsel never obtained this affidavit.

The Petitioner, a Range I offender, said Counsel informed him that, if he was willing to plead guilty, the Petitioner could plead guilty to conspiracy and be sentenced to between three and six years. According to the Petitioner, Counsel advised him if he did not plead guilty then the court would sentence him as a Range II offender. The Petitioner said Counsel's statements "forced" him into pleading guilty, and he would not have pled guilty if he had realized he "could have got[ten] a better deal."

On cross-examination, the Petitioner acknowledged that the statement in which Gamble claimed ownership of the drugs was part of her admission to police that she and the Petitioner worked together to sell crack cocaine. Further, he agreed Gamble's statement did not exculpate the Petitioner in any way. The Petitioner explained he wanted to listen to the tape of the transaction even though Counsel had already identified his voice on the tape because "[his] life [was] in jeopardy."

3

The Petitioner confirmed he pled guilty as a Range I offender to a Class B felony, criminal responsibility for the sale of a Schedule II substance, which carries a sentence of between eight and twelve years with thirty percent release eligibility. He also acknowledged that, if he had pled guilty as a Range II offender to conspiracy, a Class C felony, he would have received between six and ten years, but he would have had a thirty-five percent release eligibility date. When pressed to explain why he preferred a higher release eligibility date, he explained he wanted to plead guilty to conspiracy because it more accurately reflected his involvement in the transaction. According to the Petitioner, Counsel did not adequately explain to the Petitioner that he could be convicted of the sale of the cocaine based on his involvement in the transaction. The Petitioner acknowledged that if he were granted a new trial, he could be charged with both conspiracy and criminal responsibility for sale of a Schedule II substance, with a potential total sentence of twenty years.

Counsel testified he had been licensed to practice law in Tennessee for thirty-five years, and half of his practice consisted of criminal defense work. He testified he represented the Petitioner during the plea negotiations that led to his conviction, and he met with the Petitioner at least four times in jail and at each of the Petitioner's court dates. Counsel said that some of these meetings lasted several hours, far longer than the Petitioner had estimated. Counsel said he learned the relevant information about the charges against the Petitioner during the Petitioner's preliminary hearing. He explained that, during this preliminary hearing, he cross-examined Shane George, one of the primary officers involved in the State's case. Counsel said he made several discovery requests of the State, and, as a result, he received one audio recording of the informant's phone call to the Petitioner and one audio recording of the transaction transmitted through the informant's bodywire. He did not recall whether he could identify the Petitioner's voice on either recording, and he testified he did not remember telling the Petitioner he had recognized his voice.

Counsel agreed that Agent Timothy Lane, Director of the judicial district's Drug Task Force, knew most relevant details of each controlled buy conducted by the Task Force. Counsel said he spoke with Agent Lane at least three times. The first time he spoke with the agent was to request the Petitioner have the opportunity to collaborate with the Task Force in exchange for their telling the State about his cooperation. Counsel collected additional information about the Petitioner's case when he cross-examined Agent Lane during the Petitioner's preliminary hearing. Also, because Gamble pled guilty and was sentenced before the Petitioner pled guilty, Counsel observed her sentencing hearing and realized Gamble had agreed to testify in the Petitioner's trial and she testified to nothing beneficial to the Petitioner's case.

Counsel said that, throughout his preparation for the Petitioner's trial, he was in constant contact with the State about possible plea deals for the Petitioner. He said he explained to the Petitioner the risk of being convicted as a Range II offender of conspiracy if they went to trial. Counsel told the Petitioner that, if he instead pled guilty as a Range I offender, he could avoid the longer sentence that comes with being a Range II offender. He said he explained the different elements of conspiracy and criminal responsibility, and he insisted the Petitioner appeared to understand and did not ask for further clarification of any aspect. Counsel testified that the Petitioner decided to plead guilty in order to avoid receiving more than an eight-year sentence at thirty percent.

4

Counsel testified the trial court explained to the Petitioner his rights as a criminally accused defendant and that the Petitioner appeared to understand. In Counsel's opinion, the Petitioner voluntarily pled guilty to criminal responsibility, although the Petitioner was disappointed his sentence would not be concurrent with a previous sentence he was serving at the time of sentencing.

On cross-examination, Counsel explained that he did not transcribe the audio recording of the drug transaction and provide a copy of the transcription to the Petitioner because the cost of transcription would have exceeded the fee the Petitioner paid Counsel for his representation. He said he brought the CD that contained the recordings to one of his visits to the Petitioner in jail, but the jail did not have a CD player on which the two could listen to the recordings. Counsel said, however, that the recordings were not crucial to the State's case because Gamble agreed to testify that the Petitioner participated in the drug sale with her. He reiterated that he did not recall recognizing the Petitioner's voice on the recordings, saying that his notes reflected only that he identified the female confidential informant's voice on the recordings.

As to his and the Petitioner's discussions about whether to go to trial, Counsel said he told the Petitioner he would try to convince the State to allow the Petitioner to plead to a Class C felony, which would carry a sentence of between three and six years. He testified that he never guaranteed the Petitioner the State would agree to such a plea. Counsel said he and the Petitioner discussed the Petitioner's criminal history, which included two felony convictions and probation violation.

At the conclusion of the post-conviction hearing, the trial judge, who had also presided over the Petitioner's guilty plea hearing, noted that he had given a "pretty thorough" plea explanation at the Petitioner's sentencing hearing. The trial judge recalled that, at the Petitioner's guilty plea hearing, he made sure the Petitioner understood to what he was pleading, was aware of his rights, and realized that the State's case must be supported by a sufficient factual basis. The post-conviction court found that the Petitioner voluntarily pled guilty and that he received a "fair settlement under the circumstances." Also, the court found that Counsel conducted a thorough investigation of the charges against the Petitioner and adequately communicated with him. The court then denied the petition. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the trial court erred when it denied his petition for post-conviction relief because Counsel: (1) failed to adequately investigate the Petitioner's case, neglecting to obtain Gamble's statement and to review the evidence supporting the State's charges; and (2) failed to adequately communicate with the Petitioner, neglecting to explain to the Petitioner both the evidence the State would present if the Petitioner went to trial and the elements of the offense to which the Petitioner pled guilty. The Petitioner also contends that the cumulative effect of Counsel's errors was to create an atmosphere that was fundamentally unfair, which would dispense with the Petitioner's burden of showing prejudice from Counsel's conduct. The State responds that, because the Petitioner failed to prove his claims by clear and convincing evidence, the

post-conviction court properly denied post-conviction relief.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State,* 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can only be overcome when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State,* 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White,* 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter,* 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State,* 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland,* 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell,* 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's

6

perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns,* 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State,* 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.' *Burger v. Kemp,* 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic,* 466 U.S. 648, 665 n. 38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State,* 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House,* 44 S.W.3d at 515 (citing *Goad v. State,* 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House,* 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State,* 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *Harris v. State,* 875 S.W.2d 662, 665 (Tenn. 1994). Additionally, in cases involving a guilty plea, a petitioner must show a reasonable probability that, but for counsel's deficiency, he would have gone to trial instead of entering a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### A. Counsel's Communication with the Petitioner

The Petitioner contends Counsel failed to adequately confer with him about his case and thereby failed to provide the effective assistance of counsel. The Petitioner failed, however, to support his contention at the post-conviction hearing with clear and convincing evidence. *See* T.C.A. § 40-30-110(f). The post-conviction court found that Counsel met with the Petitioner at least three times in jail and numerous times during the Petitioner's court dates and that Counsel explained the repercussions of pleading guilty as well as the elements of conspiracy and criminal responsibility. The record does not preponderate against the post-conviction court's findings of fact. *See Fields*, 40 S.W.3d at 456-57.

We conclude, therefore, that the Petitioner failed to prove that Counsel did not properly communicate with the Petitioner. Counsel's representation, including his communications with the Petitioner, fell within the range of competence normally required of attorneys in criminal trials. *See Baxter,* 523 S.W.2d at 936. Moreover, the Petitioner does not offer any theory as to how he was prejudiced by Counsel's alleged failure to properly communicate with him. *Strickland,* 466 U.S. at 694. Having failed to demonstrate either prong of the *Strickland* standard, the Petitioner fails to

demonstrate that Counsel was ineffective in this regard. *Id.* He is not entitled to relief based on this issue.

### B. Counsel's Investigation of the Petitioner's Case

The Petitioner next contends that Counsel was ineffective because he failed to thoroughly investigate the charges against the Petitioner. When the post-conviction court denied the Petitioner's claims of ineffective assistance based on this claim, it found that Counsel attended the Petitioner's preliminary hearing, attended Gamble's sentencing hearing, spoke with Agent Timothy Lane, and listened to the recordings of the drug transaction. The record does not preponderate against the post-conviction court's findings. *See Fields*, 40 S.W.3d at 456-57.

We further conclude that Counsel's investigation of the Petitioner's case did not fall outside the wide range of reasonable attorney conduct in criminal trials. *See Baxter*, 523 S.W.2d at 936. Counsel attended Gamble's sentencing hearing, spoke with Agent Lane about the Petitioner's case, cross-examined Agent George at the Petitioner's preliminary hearing, and listened to the recordings of the drug sale. In our view, this is a reasonable investigation of the criminal charges. *See Burns*, 6 S.W.3d at 462. As to the Petitioner's specific claim that Counsel should have obtained a statement from Gamble, the record reveals that Gamble had agreed to testify that the Petitioner actively participated in the drug sale. The Petitioner himself acknowledged at the post-conviction hearing that Gamble never said that the Petitioner was not involved in the transaction. Because any statement from Gamble, therefore, would have further implicated the Petitioner, Counsel's decision to not seek Gamble's statement was reasonable. Further, the Petitioner failed to present at his post-conviction hearing the statement he desired Counsel to elicit from Gamble. As such, we conclude the Petitioner failed to demonstrate what prejudice he suffered from Counsel's not procuring a statement from Gamble. *Strickland*, 466 U.S. at 694. The Petitioner is not entitled to relief on this issue.

### C. Cumulative Error

Finally, the Petitioner asserts that he is entitled to post-conviction relief due to the cumulative effect of Counsel's errors. We recognize that while individual errors may not necessitate error, the combination of multiple errors may necessitate reversal of a conviction in order to ensure a defendant receives a fair trial. *State v. Zimmerman*, 823 S.W.2d 220, 228 (Tenn. Crim. App. 1999). However, having found no error in Counsel's representation of the Petitioner, we cannot conclude, as the Petitioner urges, that Counsel's conduct amounted to "cumulative error" depriving the Petitioner of his right to a fair trial. *See id*. Consequently, we conclude the Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude the post-conviction court properly denied the Petitioner's request for post-conviction relief. Accordingly, we

affirm the judgment of the post-conviction court.


                                                _____

                                                ROBERT W. WEDEMEYER, JUDGE